UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JHOTI CRAWFORD,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:16-cv-02919-KJN<br><br>ORDER |

Plaintiff Jhoti Ashok Crawford seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 19.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 24.) Thereafter, plaintiff filed a reply brief. (ECF No. 25.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on January 15, 1980, and has received a GED.[2] (Administrative Transcript ("AT") 36, 171.) On September 30, 2013, plaintiff applied for SSI, alleging that his disability began on August 1, 2012. (AT 8, 173.) Plaintiff was incarcerated in prison at the time of the alleged onset date, and was released on October 9, 2013. (AT 142, 169–75.) Plaintiff claimed that he was disabled due to asthma, Hepatitis C, history of head injury, bipolar disorder, depressive disorder, dysthymic disorder, and anti-social personality disorder. (AT 170.)

After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on March 25, 2015. (AT 33–51.) Subsequently, the ALJ obtained an interrogatory from Joy Yoshioka, a vocational expert ("VE"). (AT 206–14.) The ALJ provided plaintiff notice of this interrogatory, as well as an opportunity to respond or request an additional hearing. (AT 219–20.) On May 6, 2018, through his attorney, plaintiff acknowledged reviewing the interrogatory and neither objected nor requested a supplemental hearing. (AT 222.)

The ALJ subsequently issued a decision dated June 8, 2015, determining that plaintiff had not been under a disability as defined in the Act, from September 30, 2013, the date the application was filed, through the date of the ALJ's decision. (AT 16–28.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 17, 2016. (AT 1–3.) Plaintiff subsequently filed this action on December 13, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ failed to apply the special psychiatric review technique; (2) whether the ALJ failed to make a proper step three determination; (3) whether the ALJ improperly weighed the medical opinion evidence; (4) whether the ALJ's residual functional capacity ("RFC") determination was without substantial

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

evidence support; and (5) whether the ALJ improperly found plaintiff capable of past relevant work.[3]

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At step one, the ALJ concluded that plaintiff has not engaged in

---

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled

substantial gainful activity since September 30, 2013, the date of his application. (AT 18.) At step two, the ALJ found that plaintiff had the following severe impairments: Hepatitis C, bipolar disorder, post-traumatic stress disorder ("PTSD"), and anti-social personality disorder ("ASPD"). (Id.) However, at step three the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 19.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could "perform medium work as defined in 20 CFR 416.967(c) except that the claimant is limited to simple, routine, and repetitive tasks and can only occasionally interact with the public. (AT 21.) At step four, the ALJ determined that plaintiff was "capable of performing past relevant work as a forklift driver and waiter" because these jobs did "not require the performance of work-

---

persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

related activities precluded by [plaintiff's RFC]." (AT 26.) In the alternative, the ALJ found at step five that, in light of plaintiff's age, education, work experience, RFC, and the VE's interrogatory testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (AT 26–27.)

Therefore, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from September 30, 2013, the date the application was filed, through June 8, 2015, the date of the ALJ's decision. (AT 27–28.)

      B.      <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

           1.      *Whether the ALJ failed to apply the special psychiatric review technique*

When an applicant for SSI presents a colorable claim of mental impairment, the "ALJ must evaluate an applicant's mental impairments via a special psychiatric review technique outlined in 20 C.F.R. § . . . 416.920a . . ." <u>Angevine v. Colvin</u>, 542 F. App'x 589, 591 (9th Cir. 2013). During the time when the ALJ decided this matter, 20 C.F.R. § 416.920a required an ALJ to

> first evaluate [a claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable mental impairment(s). . . . If [the ALJ] determines that [the claimant] ha[s] a medically determinable mental impairment(s), [the ALJ] must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his or her] findings. . . . [An ALJ] must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section. . ."

20 C.F.R. § 416.920a(b)(1)-(2) (as enacted on May 3, 2011, 76 FR 24810).

Paragraph (c) "identified four broad functional areas in which [an ALJ] will rate the degree of [a claimant's] functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. 416.920a(c)(3) (as enacted on May 3, 2011, 76 FR 24810). These four broad functional areas are identical to those listed in paragraph B in the Listings for Mental Disorders. <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00A.[5]

---

[5] Plaintiff misapprehends which law governed the ALJ's June 8, 2015 opinion, and erroneously asserts that the 2017 version of the Commissioner's regulations should control. (ECF No. 19 at

Here, the ALJ appropriately applied the special psychiatric technique, as required. First, at step two, the ALJ determined that plaintiff's bipolar disorder, PTSD, and ASPD were medically determinable severe mental impairments. (AT 18.) Then, during the subsequent steps, the ALJ explicitly discussed what "symptoms, signs, and laboratory findings" substantiated the presence of these impairments. (See AT 19–26.) Finally, during step three, the ALJ discussed the four broad functional areas listed in 20 C.F.R. 416.920a(c)(3), when determining whether or not plaintiff's mental impairments met or equaled any of the Listings for Mental Disorders. (See AT 19–20.) As explained below, the ALJ's step three determination is supported by substantial evidence.

    2. *Whether the ALJ failed to make a proper step three determination*

The claimant "bears the burden of proving that . . . [h]e has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings. . . . A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will

---

13.) However, these regulations were not even adopted until after the ALJ's decision, and there is no basis to apply the regulations retroactively. See 81 FR 66138-01, *66138, available at 2016 WL 5341732 ("These rules are effective January 17, 2017").

look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). Furthermore, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. Id. at 1550.

Here, the ALJ determined that plaintiff did not have an impairment that met or equaled any listing. (AT 19–21.) However, plaintiff asserts that the ALJ's step three determination is in error and not supported by substantial evidence, because the record demonstrates that plaintiff met Listing 12.04 for Affective Disorders. (ECF No. 19 at 16–18.) Under Listing 12.04, a claimant must demonstrate that either the requirements in paragraphs A and B are satisfied, or the requirements in paragraph C are satisfied. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04. The ALJ concluded that plaintiff failed to demonstrate that the requirements of either paragraphs B or C were satisfied. (AT 19–21.)

### i. Listing 12.04, paragraph B

To satisfy paragraph B, plaintiff's mental impairment must result in at least two of the following: marked restriction in activities of daily living; social functioning; concentration, persistence, and pace; or repeated episodes of decompensation each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04B. A marked limitation means more than moderate but less than extreme. Id., Listing 12.00. The ALJ did not find any limitation to be more than moderate, and he found no episodes of decompensation. (AT 20.)

#### a. Activities of daily living

The ALJ concluded plaintiff had mild limitations in activities of daily living, reasoning:

> The claimant reported that he is able to feed, dress, and bathe himself. [AT 189.] The claimant testified that he can drive, but does not have a vehicle. He also testified that there are days when he does not want to get out of bed and does not take showers. However, the claimant stated that he helps his grandmother out around the house and will cook whatever is in the refrigerator.

7

(AT 20.)

The ALJ's reasoning is supported by substantial evidence in the record. (See AT 39–41, 189, 310.) For example, plaintiff reported to Dr. Garcia that he had moved in with his grandmother because "she is elderly and needs some assistance." (AT 310.) The ALJ reasonably determined that because claimant was able to care for himself and to help his grandmother, he only had mild limitations in his activities of daily living.

### b. Social functioning

As for social functioning, the ALJ found plaintiff had moderate limitations, reasoning:

> The claimant testified that he gets anxious being around other people and thinks that people are trying to plot against him. On November 5, 2013, Eduardo Morales, M.D., found that the claimant's mood was anxious and sad and that his irritability was increased. [AT 303.] However, by February 26, 2015, Ramon Andres Garcia, M.D., noted that the claimant's mood was good and his demeanor was friendly, but that he was experiencing increased anxiety. [AT 312.]

(AT 20.)

This finding is also supported by substantial evidence in the record. (See AT 303, 312.) Importantly, the ALJ did not discount the objective evidence, demonstrating that plaintiff had some difficulties with social functioning. Rather, the ALJ weighed the evidence and determined that it only demonstrated moderate difficulties. Where the evidence is open to more than one reasonable interpretation, the court will not disturb the ALJ's conclusions. Tommasetti, 533 F.3d at 1038.

### c. Concentration, persistence, and pace

The ALJ concluded plaintiff had moderate limitations with regard to concentration, persistence, and pace, reasoning:

> Dr. Morales found that the claimant's concentration was impaired. [AT 303.] The claimant reported to Dr. Garcia that he had problems with concentration and found it difficult to complete tasks in a job setting. [AT 310.] However, Dr. Garcia found that the claimant was alert and oriented to person, place, and time. [AT 312.] Likewise, a psychiatric evaluation on October 2, 2014 revealed that the claimant was alert and oriented to person, place, and time. [AT 326.]

(AT 20.)

This conclusion too is supported by substantial evidence in the record. (See AT 303, 310, 312, 326.) Of note, as explained, a determination that plaintiff meets a listing "must rest on objective medical evidence." Lewis, 236 F.3d at 514. Thus, the ALJ appropriately pointed out that while plaintiff's subjective complaints may have indicated a more severe limitation, the objective findings did not.

### d. Repeated episodes of decompensation

Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00. "Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." Id.

Here, the ALJ determined that:

> the claimant has experienced no episodes of decompensation, which have been of extended duration. The medical evidence of record does not show any instances of voluntary or involuntary inpatient mental health treatment. Moreover, the claimant did not report any episodes of decompensation.

(AT 20 (internal citations omitted).)

As plaintiff points out, this finding is technically incorrect. The record includes medical records from two stays plaintiff had at the mental health crisis bed, while he was incarcerated in state prison, in October and November of 2012. (See AT 242–43, 253–63.) There is further indication that plaintiff was also admitted to the mental health crisis bed on September 10, 2012, for suicidal and homicidal ideation. (AT 254.)

Still, even though the ALJ's finding that the record does not show *any* instances of inpatient mental health treatment is clearly wrong, the error is harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). The episodes of decompensation in the record are not relevant at step

9

three because each took place nearly a year before plaintiff filed his application for SSI on September 30, 2013, and plaintiff is statutorily ineligible for SSI benefits prior to the filing date of his application. See 42, U.S.C. § 1382(c)(7); 20 C.F.R. §416.335. As such, the ALJ could have accurately stated that plaintiff experienced no episodes of decompensation, *during the relevant period*. Thus, the ALJ's conclusion regarding episodes of decompensation was appropriate, notwithstanding the technical error.

### ii. Listing 12.04, paragraph C

To satisfy paragraph C, under Listing 12.04, plaintiff must demonstrate a medically documented history of a chronic affective disorder of at least two year's duration that caused more than a minimal limitation in his ability to do basic work activities, plus one of the following: repeated episodes of decompensation of extended duration, a residual disease process such that even a minimal increase in mental demands would cause a decompensation, or a current history of one or more years' inability to function outside a highly supportive living arrangement. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04C.

The ALJ determined that plaintiff did not meet paragraph C because he had not experienced any episodes of decompensation, and he is not at risk to decompensate in the future. (AT 21.) As explained, the record is devoid of any evidence of decompensation during the relevant period, which began on September 30, 2013.

Moreover, the record supports the ALJ's conclusion that plaintiff is not at risk to decompensate in the future. On February 26, 2015, plaintiff reported that he had gone nearly two years without any medication for his mental impairments, without any serious consequences. (See AT 311.) Additionally, plaintiff reported that when he was prescribed medication it helped his mood. (AT 366.) Further, plaintiff's last episode of decompensation was nearly a year before he applied for SSI. (AT 242–43.)

Therefore, substantial evidence supports the ALJ's step three determination.

### 3. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195,

1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for giving little weight to the opinions of plaintiff's treating psychiatrists Eduardo Morales, MD and Ramon Garcia, MD. (ECF No. 19 at 22–26.)

However, these opinions were contradicted by the opinion of state agency medical consultant Michael Bohnert, M.D. (See AT 66–69.) Therefore, the ALJ was required to provide

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

11

specific and legitimate reasons for discounting the opinions of Drs. Morales and Garcia, which he did provide.  See Andrews, 53 F.3d at 1041.

First, the ALJ noted that the evidence in the record "is not consistent with the opinions of Drs. Morales and Garcia" who opined that plaintiff "was not able to work full time or on a modified work schedule."  (AT 24.)  The ALJ supported this conclusion by citing to findings in the record, where plaintiff reported that his mood was improved (AT 303, 310), and numerous recent mental status examinations that "revealed generally normal findings, such as a good mood and energy level and a normal affect."  (AT 25, 311–12, 326, 336, 368, 387.)  Other evidence in the record also supports this conclusion.  Significantly, as the ALJ observed, aside from the evaluations by Drs. Morales and Garcia, and a single progress note from Dr. Garcia in 2014, "the record contains no other treatment or documentation for the claimant's mental impairments" after he was released from prison on October 9, 2013, until the ALJ's decision.  (AT 23, 303–04, 310–13, 415.)  Indeed, on February 26, 2015, plaintiff reported to Dr. Garcia that he had gone two years without any medication for his mental impairments.  (AT 311.)

Second, the ALJ noted that "Dr. Garcia did not appear to perform any objective testing on the claimant to determine that his concentration was diminished, but simply accepted the claimant's reports of decreased concentration."  (At 25.)  Importantly, the ALJ also discounted plaintiff's credibility for several reasons (see AT 22–25), and on appeal plaintiff does not challenge the ALJ's credibility determination.  Therefore, the ALJ appropriately discredited these opinions, in as much as they are based on plaintiff's subjective complaints, rather than clinical findings.

Third, the ALJ gave significant weight to the opinion of state agency consultant Dr. Bohnert, who opined that plaintiff was capable of performing simple work related tasks on a consistent basis, provided that minimal public contact was required.  (AT 25, 69.)  The ALJ determined that this opinion was more consistent with the evidence that plaintiff's condition improved on medication (AT 25, 303, 310) and that his capability for a "broad range of activities of daily living suggests that his impairments are not as debilitating as he alleged."  (AT 25, 39–41, 189, 310.)

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting the opinions of Drs. Morales and Garcia.

    4.    *Whether the ALJ's RFC determination was without substantial evidence support*

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Plaintiff argues that the ALJ erred because he failed to discuss the combined effects of all of plaintiff's impairments, and because he failed to include the limitation Dolores Leon, M.D. gave "as to fume and dust." (ECF No. 19 at 20.) These arguments are unpersuasive.

When crafting the RFC, the ALJ considered plaintiff's entire medical record, and explicitly discussed both his mental and physical limitations. (See AT 21–26.) Also, while the ALJ gave great weight to the opinion of Dr. Leon, it remained the ALJ's duty to determine the RFC. Vertigan, 260 F.3d at 1049. Moreover, the ALJ specifically noted that the fume and dust limitation, which Dr. Leon opined on January 8, 2014, was included because of plaintiff's history of Hepatitis C. (AT 24.) As of March 3, 2015, however, plaintiff's Hepatitis C viral load was undetectable. (AT 24, 378.) Thus, the ALJ did not include this limitation in the RFC.

For all the reasons discussed above, the court finds that the ALJ appropriately evaluated the combined effects of all of plaintiff's impairments, the medical opinion evidence, as well as plaintiff's credibility, which was not challenged. Therefore, the ALJ's RFC determination was supported by substantial evidence.

5. *Whether the ALJ improperly found plaintiff capable of past relevant work*

Plaintiff argues that the ALJ erred at step four, when he determined that plaintiff was capable for performing past relevant work. (ECF No. 19 at 21.) This argument is based upon plaintiff's assertions that the RFC is without substantial evidence support. (See Id. at 21–26.) Plaintiff's argument fails because, as explained, the ALJ appropriately determined plaintiff's RFC.

Additionally, the ALJ made an alternative finding at step five that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, in light of his age, education, work experience, RFC, and the VE's interrogatory testimony. (AT 26–27.) On appeal, plaintiff does not challenge this determination. As a result, even assuming that the ALJ erred in finding plaintiff capable of past relevant work at step four, any error is harmless because the ALJ nonetheless proceeded to step five. See Molina, 674 F.3d at 1111.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 24) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: March 29, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

14/ss.16-2919.crawford.order